IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                        25-CR-100

WEI QIANG LIN
aka "yunF Chen,"

                      Defendant.

## PLEA AGREEMENT

The defendant, WEI QIANG LIN, aka "yunF Chen," the United States Attorney for the Western District of New York, and the Acting Assistant Attorney General for the Environment and Natural Resources Division (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.    THE PLEA AND POSSIBLE SENTENCE

1.    The defendant agrees to waive indictment and to plead guilty to a one-count Information, which charges a violation of Title 16, United States Code, Sections 3372(d)(1) and 3373(d)(3)(A)(i); and Title 18, United States Code, Section 2, (Lacey Act False Labeling), for which the maximum possible sentence is a term of imprisonment of five (5) years, a fine of $250,000 or twice the gross pecuniary gain or loss, whichever is greater, a mandatory $100 special assessment and a term of supervised release of up to three years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.      The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to two years without credit for time previously served on supervised release. As a consequence, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in paragraph 1 of this agreement.

## II.      ELEMENTS AND FACTUAL BASIS

3.      The defendant understands the nature of the offense set forth in paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

  a.  Defendant knowingly made or submitted, and caused to be made or submitted, a false record, account, label for, or identification of wildlife; and

  b.  The wildlife was, or was intended to be, exported and transported.

## FACTUAL BASIS

4.      The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

  a.  Between on or about September 6, 2023, and or about October 10, 2023, a law enforcement agent operating in an undercover capacity (UC-1) and within the Western District of New York negotiated the sale of eight eastern box turtles to an un-indicted co-conspirator (UCC) for $2,000 via electronic message. The UCC directed UC-1 to ship the turtles to "yunF Chen" at an address in Brooklyn, New York.

    b.      After being transported from the Western District of New York, on or about October 11, 2023, the eight turtles were delivered to the defendant in Brooklyn, New York. Later the same day, the defendant, WEI QIANG LIN, aka "yunF Chen," shipped two boxes containing four box turtles each to Hong Kong, falsely labeled as "plastic animal toys." A border inspection of the packages revealed the eight turtles originating from UC-1, all bound tightly with masking tape and knotted in black socks.

    c.      Between on or about June 3, 2024, and on or about June 11, 2024, an individual operating at law enforcement's direction (CPI-1) negotiated the sale of ten eastern box turtles and ten three-toed box turtles to UCC for $5,000 via electronic message. UCC directed CPI-1 to ship the turtles to "yunF Chen" at an address in Brooklyn, New York.

    d.      Between on or about June 27, 2024, and on or about July 2, 2024, UC-1 negotiated the sale of 12 eastern box turtles to UCC for $3,500 via electronic message. UCC directed UC-1 to ship the turtles to "yunF Chen" at an address in Brooklyn, New York.

    e.      After being transported from the Western District of New York, on or about July 2, 2024, the 12 eastern box turtles were delivered to the defendant in Brooklyn, New York. The defendant also received the 10 three-toed box turtles from CPI-1 in Brooklyn, New York. Later the same day, the defendant shipped six boxes containing 22 turtles total to Hong Kong, falsely labeled as "plastic animal toys." A border inspection of the packages revealed 22 turtles (12 eastern box turtles and 10 three-toed box turtles) bound and taped inside knotted socks, each having a sticky feeling, and a mint-smelling dental toothpaste-like substance smeared on them.

    f.      In addition to the parcels exported on October 11, 2023, and July 2, 2024, between on or about August 17, 2023, and November 14, 2024, the defendant exported approximately 214 parcels containing live reptiles to Hong Kong. The parcels, some of which were identified, intercepted, and documented, contained a total of approximately 819 turtles, at least 183 of which were confirmed to be box turtles (*Terrapene sp.*), one of which was dead at the time of inspection. The species of some of the remaining turtles was also determined and included Mexican box turtles (28), Yucatan box turtles (6), and Cora mud turtles (*Kinosternon cora sp.*) (11). Approximately 11 parcels included reptiles other than turtles, including a total of seven

        venomous snakes and 18 lizards. The defendant falsely labeled all the parcels as containing items other than live reptiles, including "plastic animal toys," "sweater," and "ladies skirt."

    g.    Based upon information in this and related turtle trafficking investigations and published reports, box turtles have a market value in the pet trade in China and Hong Kong of approximately $2,000, with variations based on sex, size, and appearance. The approximate market value of the 849 turtles that the defendant illegally exported is at least $1.4 million.

### III.    SENTENCING GUIDELINES

5.    The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6.    The government and the defendant agree that Guidelines § 2Q2.1(a) applies to the offense of conviction and provides for a base offense level of 6.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

7.    The government and the defendant agree that the following specific offense characteristics do apply:

    a.    the 2-level increase pursuant to Guidelines § 2Q2.1(b)(1) [offense was committed for pecuniary gain and/or involved a pattern of similar violations]; and

    b.    the 14-level increase pursuant to Guideline § 2Q2.1(b)(3)(A)(ii) and § 2B1.1(b)(1)(H) [market value of the wildlife exceeded $550,000].

4

## ADJUSTED OFFENSE LEVEL

8.      Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is 22.

## ACCEPTANCE OF RESPONSIBILITY

9.      At sentencing, the government agrees not to oppose the recommendation that the Court apply the two-level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of 19.

## CRIMINAL HISTORY CATEGORY

10.     It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## ADJUSTMENT FOR ZERO-POINT OFFENDER

11.     It is the understanding of the government and the defendant that the defendant meets the criteria set forth in Guidelines Section 4C1.1(a)(1) – (11) (Adjustment for Certain Zero-Point Offenders), and as a result, a two-level downward adjustment applies, and the adjusted offense level is 17.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

12.     It is the understanding of the government and the defendant that, with a total offense level of 17 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **24 to 30** months, a fine of $5,000 to $50,000, and a period of supervised release of one to three years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in paragraph 1 of this agreement.

13.     The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

14.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

15.     In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

16.     It is the agreement of the parties that if the Court imposes a fine, as part of the appropriate sentence in this case, that it will be payable immediately unless, pursuant to Title 18, United States Code, Section 3572(d), the Court orders otherwise. Pursuant to Title 34, United States Code, Section 20101(b)(1)(A) (formerly Title 42, United States Code, Section 1060(b)(1)(A)), any fine imposed will be paid by the Clerk into the Cooperative Endangered Species Conservation Fund, also known as the Lacey Act reward fund. Title 16, United States Code, Section 3375(d). The defendant also agrees that the two thousand three hundred and thirty-nine dollars ($2,339) United States currency that was recovered by law enforcement officers from the defendant will be paid into the Cooperative Endangered Species Conservation Fund, also known as the Lacey Act reward fund. This agreement applies only to the amount of the fine and does not affect the length and conditions of a term of supervised release that may be imposed by the Court at sentencing.

## IV.   STATUTE OF LIMITATIONS

17.     In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.    IMMIGRATION CONSEQUENCES

18.    The defendant acknowledges that the defendant is not a citizen of the United States. The defendant understands that since he is not a citizen, the defendant's guilty plea and conviction make it very likely that the defendant's removal from the United States is presumptively mandatory, and that, at a minimum, the defendant is at risk of being removed or suffering other adverse immigration consequences. The defendant is on notice that the defendant's ability to enter, remain, and/or reside in the United States is subject to the laws, regulations, and associated policies of the Department of Homeland Security. The defendant understands that any effect that the defendant's conviction in this action will have upon the defendant's immigration status, that is, possible removal, denaturalization, or other immigration consequence, is the subject of a separate proceeding. The defendant has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant's immigration status, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

19.    The defendant understands that the defendant is bound by the guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to the guilty plea and to the sentence based on those consequences and agrees not to seek to withdraw the guilty plea or to file a direct appeal or any kind of collateral

attack challenging the guilty plea, conviction, or sentence, based on the immigration consequences of the guilty plea, conviction, or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

### VI. GOVERNMENT RIGHTS AND OBLIGATIONS

20. The defendant understands that the government has reserved the right to:

   a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

   b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

   c. advocate for a specific sentence consistent with the terms of this agreement including the amount of [restitution and/or] a fine and the method of payment;

   d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

   e. oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

21. At sentencing, the government will move to dismiss Criminal Complaint pending against the defendant under Magistrate No. 24-mj-175.

9

22. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII. APPEAL RIGHTS

23. The defendant knowingly waives the right to appeal and collaterally attack the defendant's conviction in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255, and/or Section 2241. In addition to any other claims the defendant might raise, the defendant knowingly waives the right to challenge the conviction based on: (1) any non-jurisdictional defects in the proceedings prior to entry of this plea; (2) a claim that the statutes to which the defendant is pleading guilty are unconstitutional, (except in the event that, in the future, the Supreme Court finds the statute in question unconstitutional); and (3) a claim that the conduct admitted in the Factual Basis of this plea agreement does not fall within the scope of the statutes to which the defendant is pleading guilty.

24. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack, in any proceeding, including but not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment of 24 to 30 months, a fine of a fine of $5,000 to $50,000, and a period of supervised release of 1 to 3 years, notwithstanding the manner in which the

Court determines the sentence. The defendant further knowingly waives the right to appeal and/or collaterally attack any condition of supervised release imposed by the Court for which the defendant had notice, including from a recommendation by the Probation Office in the Presentence Investigation Report, and did not object. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

25. The defendant understands that by agreeing not to collaterally attack the conviction or sentence in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, the defendant is waiving the right to challenge the conviction or sentence in the event that, in the future, the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

26. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment of 24 to 30 months, a fine of a fine of $5,000 to $50,000, and a period of supervised release of 1 to 3 years, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

27. By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the government has failed to produce any discovery material, (other than material the government was required to produce under *Brady v. Maryland* and its progeny), that has not already been produced as of the date of the signing of this Agreement.

28. Notwithstanding the foregoing, nothing in the Appeal Rights section of this plea agreement shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise.

## VIII. ABANDONMENT PROVISIONS

29. The defendant agrees to voluntarily abandon the following items seized during the criminal investigation associated with this matter and waives any and all rights or interest which the defendant may still possess in said property or for which the defendant may have any claim. The defendant specifically agrees to voluntarily abandonment of the following items seized from the defendant by law enforcement:

Non-wildlife Items
- a. One (1) Apple iPhone 13, serial # HGXLR0EL0D8X, color: silver, with a sage green case, assigned seizure tag #134391;
- b. One (1) OnePlus Android cell phone, serial # 04b3dcf6, color: black, assigned seizure tag #134391; and
- c. Two thousand three hundred and thirty-nine dollars ($2,339) U.S. Currency, assigned seizure tag #134396.

Wildlife Items

a. Four (4) live Mexican box turtles (*Terrapene carolina mexicana*), assigned seizure tag #086721;
b. Four (4) live Mexican box turtles, assigned seizure tag #086240;
c. Four (4) live Mexican box turtles, assigned seizure tag #086239;
d. Four (4) live Mexican box turtles, assigned seizure tag #086238;
e. Four (4) live Mexican box turtles, assigned seizure tag #086237;
f. Four (4) live Mexican box turtles, assigned seizure tag #086236;
g. Three (3) live Yucatan box turtles (*Terrapene carolina yucatana*), assigned seizure tag #068723;
h. Three (3) live Yucatan box turtles (*Terrapene carolina yucatana*), assigned seizure tag #068715;
i. Four (4) live Mexican box turtles (*Terrapene carolina mexicana*), assigned seizure
j. tag #068725;
k. Eight (8) Eastern box turtles (*Terrapene carolina carolina*), assigned seizure tag #542824;
l. Five (5) venomous green tree vipers (*Trimeresurus species*), two (2) palm pit vipers ;
m. (*Bothriechis species*), three (3) box turtles, five (5) *Abornia species* lizards, and four (4) spiny lizards (*Sceloporus species*), assigned seizure tag #125610;
n. Four (4) live Gulf Coast box turtles, assigned seizure tag #547541;
o. Three (3) live Gulf Coast box turtles (*Terrapene carolina major*), assigned seizure tag #097150;
p. Nine (9) live *Abornia species* lizards, assigned seizure tag #126372;
q. Three (3) live box turtles, assigned seizure tag #086444;
r. Six (6) live *Abornia species* lizards, assigned seizure tag #126393;
s. Three (3) live ornate box turtles, assigned seizure tag #125654;
t. Seven (7) live box turtles, assigned seizure tag #125658;
u. Six (6) live ornate box turtles, assigned seizure tag # 125142;
v. Five (5) live ornate box turtles, assigned seizure tag # 086441;
w. Five (5) live ornate box turtles, assigned seizure tag # 107823;
x. Five (5) live ornate box turtles, assigned seizure tag # 107825;
y. Three (3) live box turtles (*Terrapene species*), assigned seizure tag #107806;
z. Three (3) live box turtles (*Terrapene species*), assigned seizure tag #107801 ;
aa. Three (3) live box turtles (*Terrapene species*), assigned seizure tag #107802;
bb. Four (4) live box turtles (*Terrapene species*), assigned seizure tag #107804;
cc. Three (3) live box turtles (*Terrapene species*), assigned seizure tag #107803;
dd. Three (3) live box turtles (*Terrapene species*), assigned seizure tag #107805;
ee. Three (3) live box turtles (*Terrapene species*), assigned seizure tag #107999;
ff. Five (5) live box turtles (*Terrapene species*), assigned seizure tag #126389;
gg. Five (5) live box turtles (*Terrapene species*), assigned seizure tag #126387;
hh. Four (4) live box turtles (*Terrapene species*), assigned seizure tag #126374;

    ii.    Four (4) live box turtles (*Terrapene species*), assigned seizure tag #126377;
    jj.    Three (3) live box turtles (*Terrapene species*), assigned seizure tag #126376;
    kk.    Four (4) live box turtles (*Terrapene species*), assigned seizure tag #126375;
    ll.    Four (4) live box turtles (*Terrapene species*), assigned seizure tag #126373;
    mm.    Four (4) live box turtles (*Terrapene species*), assigned seizure tag #125820;
    nn.    Four (4) live box turtles (*Terrapene species*), assigned seizure tag #125819;
    oo.    Four (4) live box turtles (*Terrapene species*), assigned seizure tag #125826;
    pp.    Two (2) live box turtles (*Terrapene species*), assigned seizure tag #547549;
    qq.    Two (2) live box turtles (*Terrapene species*), assigned seizure tag #547550;
    rr.    Two (2) live box turtles (*Terrapene species*), assigned seizure tag #547578;
    ss.    Two (2) live box turtles (*Terrapene species*), assigned seizure tag #547579;
    tt.    Two (2) live box turtles (*Terrapene species*), assigned seizure tag #142410;
    uu.    Six (6) Cora mud turtles (*Kinosternon cora*), assigned seizure tag #113728;
    vv.    Five (5) Cora mud turtles (*Kinosternon cora*), assigned seizure tag #602368;
    ww.    Five (5) live box turtles (*Terrapene species*), assigned seizure tag #125656;
    xx.    Four (4) live box turtles (*Terrapene species*), assigned seizure tag #125656;
    yy.    Five (5) live box turtles (*Terrapene species*), assigned seizure tag #125655; and
    zz.    Five (5) live box turtles (*Terrapene species*), assigned seizure tag #125656.

30.    The defendant agrees to waive any time restrictions, requirement, or any other applicable federal law, with respect to the abandonment of this property. The defendant hereby knowingly and voluntarily waives any right, title, and interest in the property, and agrees not to contest the vesting of title in the government. The defendant further waives the provisions of 41 Code of Federal Regulations 128-48.102-1, and 41 C.F.R. 128-48.50 with respect to the abandonment of the above items and agrees to sign any and all documentation in order to assist the government in facilitating the abandonment of the said property.

31.    The defendant further understands that the government and any law enforcement agency acting on behalf of the government, including but not limited to the U.S. Fish & Wildlife Service, may in its discretion, destroy the above cellular phones.

32. The defendant agrees that the above items are subject to abandonment, and agrees to waive all statutory and constitutional rights, including but not limited to, time restrictions and notice provisions with respect to the abandonment of the above cellular phones, currency, and wildlife.

33. The defendant agrees that the above currency will be paid into the Cooperative Endangered Species Conservation Fund, also known as the Lacey Act reward fund.

34. The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for forfeiture, abandonment, and disposition of the cellular phones, currency, and wildlife survives and shall be given full force and effect. The failure of the defendant to forfeit any property as required under this agreement, including the failure of the defendant to execute any document to accomplish the same on timely notice to do so, may constitute a material breach of this agreement.

35. The defendant agrees that if, for any reason, in any pleadings before the Court, or any order of the Court, including but not limited to the Preliminary and/or Final Order of Forfeiture and the Judgment and Commitment, the government fails to properly identify an item to be forfeited, fails to include any item that is forfeitable under the applicable forfeiture statute in this case, or includes a clerical or technical error, the defendant will consent and not oppose any effort by the government to amend, correct, or add to the description/list of items subject to forfeiture in this case. Additionally, to the extent necessary, and at the discretion of the United States Attorney's Office, the defendant further agrees in the alternative, to the

abandonment or civil forfeiture of any items that were excluded from the original description of items to be forfeited. Finally, if not specially identified or listed above, the defendant agrees to the abandonment of any and all cellular phones seized by law enforcement in this case.

## IX. TOTAL AGREEMENT AND AFFIRMATIONS

36. This plea agreement represents the total agreement between the defendant, WEI QIANG LIN, aka "yunF Chen," and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

MICHAEL DIGIACOMO
United States Attorney
Western District of New York

BY: _____
AARON MANGO
Assistant United States Attorney

Dated: August 11, 2025

ADAM GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Div.

BY: _____
RACHEL ROBERTS
Trial Attorney

Dated: August 11, 2025

I have read this agreement, which consists of pages 1 through 17. I have had a full opportunity to discuss this agreement with my attorney, Aleksander B. Milch, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____  
WEI QIANG LIN  
Defendant

Dated: August 11, 2025

_____  
ALEKSANDER B. MILCH, ESQ.  
Attorney for the Defendant

Dated: August 11, 2025

**TO BE USED WITH INTERPRETER:**

I, Mark Hwoh, hereby affirm under penalty of perjury that I am a Mandarin Interpreter and that I have carefully and fully translated the entire plea agreement (set forth above) to the defendant, WEI QIANG LIN; further that the defendant has indicated to me that the defendant understands the terms of this plea agreement and that by signing this agreement, the defendant agrees to all of its terms and conditions; the defendant has further specifically acknowledged to me that the defendant is signing the agreement voluntarily and after full consultation with the defendant's attorney, Aleksander Milch, Esq.

DATED: August 11, 2025.

_____  
Interpreter